UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

JUL -1 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

PRODUCE ALLIANCE, et al.,

    Plaintiffs,

v.                                                 Civil Action No. 2:10cv198

LET-US PRODUCE, et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the court on a motion for interim distribution based on the "Proof of Claim" submitted by plaintiff/claimant Poppell's Produce, Inc. ("Poppell's"). Poppell's proof of claim documents unpaid receivables arising from produce sales to defendant Let-Us Produce Inc. ("Let-Us Produce"). Subsequent to the filing of such proof of claim, defendants timely voiced their opposition to Poppell's claim in accordance with the "Consent Injunction and Agreed Order Establishing PACA Trust Claims Procedure" previously entered in this case. (Dkt. No. 32.) On March 31, 2011, this court issued an Opinion and Order resolving the majority of the claims filed by the other plaintiffs, but expressly reserved ruling on Poppell's request for distribution/proof of claim. (Dkt. No. 186.) The court ordered additional briefing, which has now been received, regarding the validity of Poppell's PACA claim. For the reasons set forth below, the court **DENIES** the motion for interim distribution as to Poppell's and **DISALLOWS** Poppell's proof of claim.

### I. Summary of March 31, 2011 Opinion and Order

The factual and procedural background of this case is set forth in detail in this court's

March 31, 2011 Opinion and Order. After a lengthy analysis, the court's prior Opinion and Order concludes that, pursuant to The Perishable Agricultural Commodities Act ("PACA") and associated regulations, the majority of the plaintiffs/claimants in this case had valid PACA claims. See 7 U.S.C. § 499e(c); 7 C.F.R. § 46.46(e). The court reached such conclusion after determining that "the PACA statute and regulations include two clear prerequisites to qualify for trust coverage: (a) timely notice of the assertion of PACA trust rights; and (b) credit cannot be extended beyond 30 days." (Dkt. No. 186 at 6.) The facts before the court established that such prerequisites were met as to nearly all of the plaintiffs' claims; however, defendants still argued that numerous plaintiffs' failure to comply with another provision of the relevant statute and regulations (the "writing requirement") invalidated such properly noticed claims. The court found that neither the statute nor regulations expressly state whether failure to comply with the so-called "writing requirement" results in the automatic invalidation of a PACA claim or whether it merely renders unenforceable a non-complying agreement that was not reduced to writing. After carefully analyzing the ambiguity in the statute and regulations, the court concluded that the latter result was appropriate based on the language of the statute and regulations as a whole, relevant case law, and the remedial nature of the statutory scheme. Notably, the court only considered the remedial nature of the statutory scheme after finding that: (1) the notice and maximum credit period prerequisites were satisfied; and (2) there was ambiguity regarding the effect of a non-conforming oral agreement to modify credit terms.

## II. Analysis of Poppell's PACA Claim

It is undisputed that Poppell's did not violate PACA's 30-day maximum term for the extension of credit. See In re Davis Distributors, Inc., 861 F.2d 416, 417-18 (4th Cir. 1988)

(quoting 7 C.F.R. § 46.46(f)(2)) ("'[T]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities.'"). Although Poppell's asserts that it is also undisputed that Poppell's provided "timely notice of the assertion of PACA trust rights," (Dkt. No. 192), there is plainly a dispute as to whether Poppell's notice of its intent to assert PACA trust rights was <u>effective</u> since Poppell's failed to fully comply with the PACA regulation governing notice.

As discussed in this court's prior Opinion and Order, the PACA statute creates a powerful trust in favor of produce suppliers in order to "protect the public interest" and remedy the "burden on commerce in perishable agricultural commodities." 7 U.S.C. § 499e(c)(1). The statutory PACA notice provisions enacted by Congress state:

> (3) The unpaid supplier, seller, or agent <u>shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust</u> to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. . . . <u>When the parties expressly agree to a payment time period different from that established by the Secretary</u>, a copy of any such agreement shall be filed in the records of each party to the transaction and <u>the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.</u>
>
> (4) <u>In addition to the method of preserving the benefits of the trust specified in paragraph (3)</u>, a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement <u>must include the information required by the last sentence of paragraph (3)</u> and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim

3

over these commodities, all inventories of food or other products derived from
these commodities, and any receivables or proceeds from the sale of these
commodities until full payment is received."

7 U.S.C. § 499e(c)(3)-(4) (emphasis added). As highlighted above, the statute plainly states that an unpaid produce supplier that otherwise qualifies for PACA trust protection "shall lose the benefits of such trust" unless the supplier properly notices its claim. Id.

Under the alternative notice provisions set forth in subsection (c)(4) of the statute (hereinafter "invoice notice"), there are either one or two requirements to properly effectuate notice, depending on the circumstances. First, under any set of facts, invoice notice requires the seller to include, on the face of its invoice, the two sentence statutory notice provision. Second, in situations where the buyer and seller have <u>expressly agreed in writing prior to the transaction</u> to modify the default 10-day PACA credit terms, the seller's invoices must expressly state the contractually modified payment period. The regulations mirror such requirements, and unambiguously state that when the parties have agreed in writing to modify the prompt payment 10-day default period, invoices must contain both the required statutory language <u>and</u> the contractually modified payment period. 7 C.F.R. § 46.46(f)(3). Specifically, the PACA regulations state:

> (3) Licensees may choose an alternate method of preserving trust benefits from the requirements described in paragraphs (f)(1) and (2) of this section. Licensees may use their invoice or other billing statement as defined in paragraph (a)(5) of this section, whether in documentary or electronic form, <u>to preserve trust benefits</u>. Alternately, the licensee's invoice or other billing statement, given to the buyer, <u>must contain</u>:
> (i) The statement: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full

4

    payment is received."; and
    (ii) <u>The terms of payment</u> if they differ from prompt payment set out in
    section 46.2(z) and (aa) of this part, <u>and the parties have expressly agreed to
    such terms in writing before the affected transactions occur</u>.

7 C.F.R. § 46.46(f)(3) (emphasis added).

    Here, Poppell's and defendant Let-Us Produce entered into a written contract to modify the PACA prompt payment period. Such written contract was executed prior to the produce transactions at issue in this case. The contract is written on Poppell's letterhead and indicates that, after evaluating the credit application submitted by Let-Us Produce, Poppell's will extend credit on 21-day terms. (Dkt. No. 53, Exh. A.) The writing further states that by signing the credit contract, Let-Us Produce represents that it has read and understands the terms set forth therein and agrees to abide by them. (<u>Id.</u>) The contract is signed at the bottom by Let-Us Produce's Office Manager.[1] (<u>Id.</u>)

    Because there is a prior written contract modifying the prompt payment period, the PACA statute and regulations require that Poppell's invoices include: (1) the two sentence statutory notice language; and (2) the "terms of payment" agreed to by the parties in writing. Although Poppell's invoices include the statutory notice language, all of its invoices state that the payment terms are "COD" rather than the "21-day" terms agreed to by written contract. Because the statute and regulations make clear that proper notice is required "to preserve trust benefits," 7 C.F.R. § 46.46(f)(3), the plain language of the regulatory scheme requires this court to conclude that failure to provide proper notice results in the loss of trust benefits. <u>See Idahoan Fresh v.</u>

---

[1] Poppell's proof of claim expressly asserts that the transactions at issue were made on "21-day" credit terms based on the "written agreement" discussed above. (Dkt. No. 53.) Furthermore, an affidavit submitted by Poppell's in support of its proof of claim acknowledges that after the date of the written agreement "the payment terms [with Let-Us Produce] were always 21 days . . . ." (Dkt. No. 135 Exh. A.)

5

Advantage Produce, 157 F.3d 197, 206 (3d Cir. 1998) (quoting 7 C.F.R. § 46.46(f)(3)(ii)) ("An invoice which serves as notice to preserve a seller's trust rights . . . must include 'the terms of the payment if they differ from prompt payment set out in section 46.2(z) and (aa) of this part, and the parties have expressly agreed to such terms in writing before the affected transactions occur.'") (emphasis added); Greg Orchards & Produce, Inc. v. Roncone, 180 F.3d 888, 890-91 (7th Cir. 1999) ("[T]o preserve its PACA trust rights, a supplier must comply with the notice requirements set forth at 7 U.S.C. § 499e(c)(3), (4) and 7 C.F.R. § 46.46(f).") (emphasis added); Overton Distributors, Inc. v. Heritage Bank, 340 F.3d 361, 366 (6th Cir. 2003) ("[T]he statutory language is quite clear. . . . [After entering into] a written agreement altering the payment terms . . . , all of the subsequent invoices . . . were required to disclose the agreed terms of payment."); Stowe Potato Sales, Inc. v. Terry's, Inc., 224 B.R. 329, 333 (W.D. Va. 1998) ("Since [the claimant] elected to give notice of its intent to preserve trust benefits via its invoices, the statutory language clearly provides that [claimant] must lose the benefits of the statutory trust if such notice was inadequate.") (emphasis added); In re Atlanta Egg & Produce, Inc., 321 B.R. 746, 753 (N.D. Ga. 2005) (noting in a case that did not involve a prior written agreement that, when such agreement exists, the PACA statute includes "strict disclosure obligations" applicable to invoice notice); see also Sid Goodman & Co., Inc. v. United States, 945 F.2d 398, 1991 WL 193489, at *4 (4th Cir. 1991) (unpublished table opinion) (discussing "PACA's strict accounting and payment requirements").

Here, because Poppell's failed to meet the express requirements of the statute and regulations that are necessary to "preserve" its PACA trust rights, Poppell's proof of claim must be disallowed. Although Poppell's was provided an opportunity to file supplemental briefing on

6

this issue, it was unable to cite a single case holding that, subsequent to the execution of a written contract modifying credit terms, an invoice that fails to include such modified terms satisfies the alternative "invoice notice" requirements. The court's review of relevant case law likewise failed to reveal a case reaching such conclusion, and instead revealed several cases finding to the contrary. See In re Ebro Foods, Inc., – F. Supp. 2d –, No. 10 C 1843, 2011 WL 2173738, at *3 (N.D. Ill. June 2, 2011) (affirming the bankruptcy judge's finding that the produce seller failed to preserve its PACA trust rights through invoice notice because the contractually modified credit terms were not disclosed on invoices); In re Bartlett, 367 B.R. 21, 30 (Bankr. D. Mass 2007) (finding that including the statutory notice provision on an invoice is "not enough" to preserve PACA rights; rather, sellers must also: (1) "be licensed under PACA" and (2) include any modified payment terms on the invoices "if the parties have expressly agreed in writing to a payment period different than the 10-day period provided by the Regulations . . . .") (emphasis added); In re Delyser, 295 B.R. 430, 435 (Bankr. W.D.N.Y. 2003) ("[W]hen a seller elects to use the invoice notice option provided for by Section 499e(c)(4) in order to notify the buyer of its intent to preserve the PACA Trust, that seller must fully comply with the provisions of that paragraph in order to preserve the benefits of the Trust. Should a seller fail to include the payment terms previously agreed to by the parties in writing on the very invoice that it elects to use to give notice of its intent to preserve the PACA Trust, it loses the benefits of the Trust."); see also Overton, 340 F.3d at 367 (explaining that because the parties had a prior written agreement modifying PACA's 10-day default credit terms, "PACA and the regulations mandate that those terms had to be disclosed on the invoices"); Nature Quality Vine Ripe Tomatoes v. Rawls Brokerage, Inc., 536 F. Supp. 2d 1259, 1268 (N.D. Ala. 2005) (finding that failure to

7

reproduce contractually modified payment terms on "accountings" related to the produce transactions at issue resulted in the loss of eligibility for PACA trust benefits); In re San Joaquin Food Service, Inc., 958 F.2d 938, 940 (9th Cir. 1992) (finding that under the final sentence of 7 U.S.C. § 499e(c)(3), the same sentence that is now cross-referenced by the "invoice notice" provision located in subsection 499e(c)(4), if the parties agree by contract to modify the default payment terms, "a failure to include payment terms in invoices divests the seller of trust benefits");[2] cf. Idahoan Fresh, 157 F.3d at 208-09 (recognizing a potential conflict between the 3rd Circuit's analysis in Idahoan Fresh and the Ninth Circuit's analysis in San Joaquin, but nevertheless acknowledging that "a written agreement to extend the payment period gives rise to the obligation to include the payment term on the invoice which serves as notice of the seller's intent to preserve it PACA rights") (emphasis added); Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc., 307 F.3d 666, 670 (7th Cir. 2002) (noting that a PACA trust is "automatically created" upon the acceptance of a produce shipment "so long as the supplier complies with the specific notice requirements set out in 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f).").

Notwithstanding this court's prior ruling in this case, the court agrees with the analysis in the cases set forth above. The clear command of the relevant statutory and regulatory language is that once the parties enter into a written agreement to modify payment terms, such terms must be reproduced on all invoices in order to give effective notice and thereby preserve PACA trust rights. Accordingly, the court must conclude that Poppell's failed to preserve its PACA trust rights. See Stone v. Instrumentation Laboratory Co., 591 F.3d 239, 243 (4th Cir. 2009) (quoting

---

[2] In 1995, the PACA statute was modified to include subsection (c)(4), thereby permitting "invoice notice" as an alternative method of preserving PACA trust rights. Accordingly, only cases decided after 1995 interpret subsection (c)(4) of the statute and § 46.46(f)(3) of the regulations, the provisions applicable to determining the validity of Poppell's claim.

8

Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)) ("If the plain language of the statute resolves the question and 'the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'").[3]

---

[3] The court recognizes the fact that this court's prior Opinion and Order and the instant Opinion and Order reach divergent conclusions regarding validity of the respective PACA claims. Such disparate outcomes result from the fact that the court previously was faced with resolving an ambiguity, whereas here, no such ambiguity exists. As discussed at length in the prior Opinion and Order, the PACA statute and regulations do not indicate whether oral agreements are unenforceable or whether they invalidate PACA trust rights. In the face of such ambiguity, this court, like several others, concluded that oral agreements to modify PACA credit terms are simply unenforceable. In contrast to such analysis, here, there is no ambiguity as the statute and regulations expressly dictate that proper notice is required to preserve trust benefits. The court acknowledges that, when compared to claimants that failed to reduce oral agreements to writing, Poppell's appears on the surface to be better positioned to claim protections under PACA. However, Poppell's compliance with the statutory "writing requirement" necessarily results in the imposition of an <u>additional mandatory requirement</u> that could not be stated more clearly in the controlling regulations. See Stowe Potato Sales, Inc., 224 B.R. at 333 ("PACA and its regulations require that the invoice notice set forth the payment terms <u>only if</u> there is a pre-transaction written agreement.") (emphasis added). Accordingly, the court's ruling herein is not, as claimed by Poppell's, the result of "[r]eading additional requirements and penalties into the PACA statute and regulations," (Dkt. No. 192 at 2); rather, it is simply based on the plain language of the statute and regulations. See 7 C.F.R. § 46.46(f)(3) (indicating that notice is required to "preserve trust benefits" and that if "the parties have expressly agreed to [modified payment] terms in writing before the affected transactions occur," such contractually modified terms must appear on invoices) (emphasis added).

Like the bankruptcy court in Delyser, this court is "uncertain as to exactly why Congress included the requirement in PACA Section 499e(c)(4) that the invoice used to give the notice of intent to preserve the trust must also disclose any payment terms agreed to in writing that are different from the 10-day term prescribed by the Secretary of Agriculture." Delyser, 295 B.R. at 435. "Nevertheless, <u>the fact is that it did</u>." Id. (emphasis added). This court is therefore obligated to apply such requirement because, as recently stated by the United States Supreme Court, federal courts must apply statutory and regulatory schemes as written even when it is impossible to do so without "acknowledg[ing] the unfortunate hand that [a] regulation has dealt [the plaintiff] and others similarly situated." PLIVA, Inc. v. Mensing, – S. Ct. –, 2011 WL 2472790, at *12 (June 23, 2011). Although reaching facially conflicting results based on very minor factual variations may seem puzzling, "it is not this Court's task to decide whether the statutory scheme established by Congress is unusual or even bizarre." Id. (internal citations omitted). Rather, "[a]s always, Congress and the [USDA] retain the authority to change the law

9

## III. Conclusion

For the reasons set forth above, the court must **DENY** the motion for interim distribution as to plaintiff/claimant Poppell's. As Poppell's failed to preserve its PACA trust rights, its PACA proof of claim is **DISALLOWED**.

The Clerk is **REQUESTED** to send copies of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ 

Jerome B. Friedman
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July /, 2011

---

and regulations if they so desire." Id.

    Here, the court acknowledges the "unfortunate hand" that the statute and regulations deal to Poppell's and recognizes that, on the surface, it "makes little sense" for the other claimants to prevail while Poppell's PACA claim is disallowed. Id. That said, because Poppell's agreed in writing to modify PACA's prompt payment terms, Poppell's necessarily became obligated by the clear and unambiguous language of the regulations to include the contractually modified credit terms on its invoices. Poppell's failure to comply with the relatively simple mandates of the "invoice notice" regulation therefore results in the disallowance of its claim.